Kelly v. Maxum Specialty Insurance Group 15-3618 May it please the Court, Sina Baharan here on behalf of Appellant Maxum and Denley Company. This appeal is about the District Court's confusion over what constitutes a parallel proceeding for purposes of exercising DJA discretion. This Court went to great lengths in the record decision for coming up with what was supposed to be a uniform approach to working through issues of DJA discretion. It's essentially a two-part test that was rolled out. The first part is critical. Is there a parallel proceeding? What does parallelism mean? Parallelism means two proceedings, same parties, same issues. In Wilhart, we had two proceedings, same parties, same issues. Wilton, two parties, same issues, same proceedings, same thing at Sumi, two proceedings. It was only in Rifer that there was one proceeding, which was the DJA that had been filed in State Court and removed, that this Court had an parallel proceeding of any kind. In Rifer, the Court held that we're not going to allow a situation where the absence of parallelism in and of itself is going to extinguish any possibility of abstention, but that being said, the lack of parallelism would give rise to a significant presumption that abstention is inappropriate. That's where the District Court first got it wrong here, and if you look at the judge's order, it actually colored everything that followed after he made that initial presumption. So you say that's an automatic remand. If you get the initial legal determination of whether parallel proceedings exist or not wrong, then by definition, the standard of review has been tainted. That's correct, Your Honor. So you want a remand, and if we say there aren't parallel proceedings, then the district judge will have to go through the Rifer factors with the inverse presumption that was used? That's correct, but if I could submit that the Court should go one step further, it was introduced as having been eight factors, the presumption followed by eight guidelines. But if you actually look at the factors together, there's a whole lot of overlap. Several of the factors cannot ever apply if there's not a parallel proceeding. So for example... You want us to rewrite the factors? No, I don't. In the District Court's exercise of sound and reasoned discretion, we'd submit that the four that he found would favor abstention, he got wrong. And that would be the fifth and sixth factor. So the fifth factor is a general policy of restraint. This whole notion of gratuitous interference. You cannot have gratuitous interference if there is not a parallel proceeding. So we believe he committed error there. Same thing goes with the sixth factor that he found would favor abstention as well. Avoidance of duplicative litigation. If there's not another proceeding, there is no risk of duplicative litigation. And then the third factor, which he also found that favored abstention here, he also seemed to be confused about what that means. So there's this notion that if you do not have a parallel proceeding, the only thing that can override that significant presumption of all the factors would be some unsettled issue of state law. And that's what we had in Ryeford's concern over the Pennsylvania Supreme Court's ability to regulate attorney conduct. Here, there is no record evidence of any unsettled state law, and there isn't. It's a very straightforward claims-man-reported issue. So he got those three. Hold on, Judge Strickland, I'd like to ask you one other thing. Yeah, I'm sorry. Finish your statement. And then I would just mention that the last factor, he also abused his discretion. This is the eighth factor. This is a notion of a conflict of interest between the carrier's duty to defend and the DJA. Here, Maxim is not defending, so there's no risk of a conflict. So none of the factors would apply, we'd submit. So to go back to the beginning, Maxim's not a party to the state litigation. The coverage issue has not been raised in the state litigation. But still, the judge said there was a possibility that Maxim could be joined. And why isn't that sufficient? Well, we know under Ryeford that that is not sufficient, because in Ryeford, there was the same possibility. The underlying case had resolved. There was a finding of both liability and damages. So the carrier in that case could have certainly been brought into the underlying case as well. They just weren't. And again, because of this idea of potentiality, if that were to be the standard, we'd submit that it would be unworkable, because I was actually trying to think about scenarios where there could not be a possibility of having the carrier be brought into the underlying case. And I don't know how that could exist. Anytime you've got a liability policy, it's responding to some underlying proceeding of some kind. Otherwise, it wouldn't be a controversy to begin with. So if you have a necessary party, that changes? A necessary party in which proceeding? For example, if Maxim would be a necessary party here in this case. In the case below? Yeah. I'm trying to think of a situation... Hasn't been joined yet. Yeah, I'm trying to think of a situation where they would become a necessary party to what we've got here, which is just a negligence case. No, no, I agree with that. I'm speaking abstractly. Yeah, I'd have to think about a scenario where they would be, but I submit that because an issue in the coverage case is always whether the policy, the contract responds or not, they're never going to be a necessary party. Whether they could be joined, that would depend on the facts of the case. One housekeeping matter. Do you want to reserve time? Yes, please. And I apologize for not having done so at the beginning. If I could reserve four minutes for that. Okay, that's granted. Ms. Motto, can you? Or did you already do that? Oh, I'll do that. Okay. Thank you. Yes, and so in addition to getting it wrong on the issue of parallelism, the four factors that the court found, favor, abstention, we believe was abuse of sound and reason, discretion. And then of the remaining four factors that he found were neutral, we'd also submit that he got those wrong as well. Because again, they overlap significantly with whether or not there's another proceeding. The first factor, the likelihood that a federal court declaration will resolve the uncertainty of obligation, which gave rise to the controversy. Could you discuss potentiality? It's kind of a vexing issue. Yes. I actually, in the course of preparing our briefs and for today, I was looking at this idea and logically refer to it as semantic tautology, which is basically if you take a definition and you extend it so broadly that it sweeps through every possibility, it essentially loses its meaning. So if having the possibility of a parallel proceeding is a parallel proceeding, well then having two proceedings with the same parties and the same issues loses its definition. So potentiality should not be the standard, cannot be the standard, and I would submit that if it was, or if it was part of the consideration, RIFER would have come out differently. Well, I mean, a couple of the cases do have some, I guess from your perspective, arguably loose language about it could be adjudicated opportunity for ventilation. How do you respond to that? Yes. And I believe that that was the court's attempt, and just in the course of drafting the opinion, to talk about events that could occur within an existing proceeding, not talking about the possibility that another proceeding could come into existence. So I read that language as just talking about what could happen in two existing proceedings. And again, if the touchstone is gratuitous interference, if that's the overriding concern that the court has as to why it should yield jurisdiction, that only makes sense if you have two proceedings. In RIFER, the other concept that obviously came up, and it touches on this idea of gratuitous interference as well, is in which instances should the federal court step back and allow the state court to resolve some issue? Wasn't there an argument that Kelly could not have brought the insurance company in in the state court matter? That's correct, Your Honor. He has no standing to have sued Maxim. And actually, I will submit that that goes to the seventh factor, which the court found neutral. But I would suggest favors actually keeping the federal court, which is this notion of procedural fencing and forum shopping. I don't want to be in a position to say, what can I do to file a separate proceeding and have it be in state court? So I guess I would submit that the standard should be what was articulated in RIFER, which is you need a parallel proceeding. And then at that point, you would look at additional considerations, the most compelling consideration being the possibility of an unsettled state law. And in the absence of that, which is what we have here, the district court committed error by issuing the remand. Thank you. Thank you, counsel. Good morning. My name is Gregory Kowalski. I'm from Pansinia-Mezro, and it's my honor and pleasure to represent one of the appellees before this court today. You're welcome. Thank you. And as I understand it, Maxim is suggesting that the trial court had a very bad day and didn't make just one mistake in the analysis, but made nine mistakes. Well, before you get there, let me challenge you on your standard of review, because I think it's wrong. You write that this is an abuse of discretion standard, and then you say no authority allows for Maxim's statement to this court that it should apply de novo review. You say that in your brief, right? Yes, Your Honor. Okay, but that's wrong, I think. I'm happy to be persuaded that I'm wrong, because it's my understanding that the decision, the initial decision, the very important initial decision as to whether a parallel proceeding exists is a question of law for the court that we review de novo, just as Maxim suggests. Your Honor, after sitting here today and hearing the questions and concerns of the panel, we're confident that even a de novo review will still affirm Judge Schlomsky's opinion. So you agree that that issue is de novo review? I'm not going to press the point. I'll concede the point and suggest that you're right. But then once you get into the next level, the RIFRA factors, that's where it's abuse of discretion. Correct. Okay, thank you. Justice O'Connor and Wilmot presented our chief case in that it is unique and substantial discretion in Wilton. The statute provides that a court may declare the statute's, quote, textual commitment to discretion and, quote, breadth of leeway distinguish the declaratory judgment context from other areas of the law in which the concept of discretion surfaces. Again, that's from Wilton. And I think most importantly, Justice O'Connor states, quote, the normal principle that federal courts should of practicality and wise judicial administration. And this is the thrust of our argument. That's a fact. Judge Schlomsky noted the practicalities. What we have here is there's a third-party suit pending in the Philadelphia Court of Common Pleas. This case is completely separate and because of the appeal is going way longer than if it was back in the state court with the same judge deciding everything. It's a practical matter to get things done. Everybody's got to be in the same room as opposed to some of the people down in this court here. But can the same judge decide everything? I believe the same judge can decide everything. If it's a jury question on a third-party case, that could be decided. But the judge could decide the declaratory judgment. Actually, I see no reason why the judge could not do that. And I have never been presented with any argument why it could not do that. I think Maxon wants to take a very narrow view of parallel proceedings. I would disagree that I think that Bill Hart and Wilton do stand on the focus that it's the potential as opposed to actual presentation of parallel issues. Bill Hart's case states, a matter of controversy between the parties couldn't be fully adjudicated. If you look at the procedural history of Bill Hart and Wilton, my reading is that the carrier filed in federal court declaratory judgment and then the insured filed one in state court. Of course, those are parallel proceedings. If that's the case that that has to be done in every declaratory judgment action, that would be a ludicrous assault. But now, kind of fleshing out your potentiality argument, must the claim have already been raised, or is it just it could have been raised and that's enough? I think it could be fully adjudicated. I think it focuses on what can be done from this point forward, not what was done in the past, but what could be done. Judge Sofsky looked at a non-published opinion, the Atlantic Mutual vs. Gullah case in which the trial court declined jurisdiction because there was a pending third party case against the insured in federal and state court, which are the exact same set of factors that are contained in this case. There was a MedMal case pending in the Delaware County Court of Common Pleas, and the trial court found that they were parallel proceedings, and this court affirmed that decision, and that was relied upon by Judge Sofsky in this case. And in that case, we can all agree that a medical malpractice case is not going to be deciding issues of coverage. But there is an issue that it could be becoming an endorsement of the proceeding, but also if we look at the practicalities of what we're doing, getting everybody in one room is going to be an easier way to try to get through the case. Isn't coverage kind of discreet from the merits here? I mean, it's important, it's a practical concern indeed, but is it really discernible from, or distinct from the actual merits of whatever the tort case is? They are discreet, but it's a practical matter. If you're going to get something resolved, I think if everybody's in the same room talking about it, you can come to some type of agreement rather than going to trial in state court and adjudicating with a federal judge, a declaratory judgment in another case. Part of what's going on here is, besides duplicative litigation, is let's try to get to the practicalities of what we're doing here. I think you have a clear winner on that in terms of practicalities. I think lawyers from both sides would appreciate the chance to get the whole mess before one state court judge, even if you've got two or three different cases filed. So I think it's hard to argue against that, but I'm not sure that gets you where you need to be because federal courts have an unflagging duty to exercise jurisdiction when they have it. Now, the declaratory judgment action does give them discretion, but the initial decision as to whether something's a parallel proceeding is an important one, I think. Would you agree? I would agree to the extent that we're going to be doing an analysis under referred. I would disagree in that even if there's not a parallel proceeding, that the referred factors, there's no referred factor that weighs in favor of keeping the case. Okay, but that's the next question. I agree with you. You could still win under referred even if there is no parallel proceeding, but what I'm trying to get at here is I think we need to make a determination whether the district court correctly found that there is a parallel proceeding, and I'm having trouble getting to that point because in Brewhart and Wilton, you have identity of issues, you have identity of parties, and here we have neither. In those two cases, I would submit that that is an artificial situation. In Wilton, the insurer notified the carrier that it intended to file a declaratory judgment action in state court. The carrier beat them to federal court and filed their action, and then the insurer filed their state court action. To me, that's an artificial set of circumstances that I have never seen before, and as a practical matter, I don't think limits us to argument of parallel proceedings. If what Maxim is arguing is... You can argue it, but why are there parallel proceedings here? You've got different issues, different parties, one's a negligence claim, one's a contract claim. If these are parallel proceedings, isn't everything a parallel proceeding as long as you've got some tangential relationship between the cases? I think it's beyond tangential. In the third part of the case pending in state court, there is going to come a time where there's going to be a collection of... A garnishment case. A garnishment action is the beginning of an entirely new proceeding. That would be in this pending case. I would suggest to your honors that that issue alone would be enough to bring the cases together. They are related in that it's the same parties that are all involved in all the cases. All the attorneys involved in the third party case are involved in this case as well, except for Maxim, who has refused to indemnify and defend the defendant in the other case. Why does Maxim claim on the merits it's not liable here? My understanding is that they're saying that the claim was untimely presented to them. The procedural history of the case was in the third party case that, for whatever reason, Karman Corporation, the defendant, did not present the claim of BBK Tavern to the carrier. Then why does Karman claim it's not liable to Kelly? Pardon me? Why does Karman claim that he's not liable to Kelly? Karman claims that they are not liable because this was a case in which there was a failure to notify an insurance carrier of a trash top case. They're saying they did nothing wrong. They were not formally presented with any information that they had an obligation to pass on to the carrier. So that's a totally different issue than the defense that Maxim's raising. Maxim's saying, if you don't timely notify us under your policy, we don't owe anything. And Karman is saying, I didn't do anything wrong here. They're two very different things. They're parallel issues. My understanding of parallel is they're running side-by-side. They're side-by-side in parallel. They never touch. They're never the same issue. So my understanding of the cases is parallel is like the railroad tracks. They never touch, but they're going to roll together. Thank you, counsel. You're welcome. Good morning. Good morning. My name is John Evans, and I have the privilege in this matter of representing Karman Corporation. Mr. Evans, do you agree that it's a no-over review on the question of whether they're parallel proceedings? Yes, I agree the standard is an abuse of discretion standard.  I just asked if it was a no-over review, which is different than abuse of discretion review. On the initial question of whether parallel proceedings exist, is that a legal question over which we exercise the no-over review? That's correct. Okay. As far as the refer factors, I would state that that's an abuse of discretion. Correct. I agree with that entirely. I believe that, in this case, the issues raised here are, by the counsel, more complex than they actually are. The statute in point 28 U.S.C. section 2201A states that the court may exercise jurisdiction to declare a detergent action. Does it say shall? It doesn't say shall not. It says may. By the plain reading of the statute, this is discretion with the trial court. Judge Slomsky entertained lengthy oral argument on this issue. Lengthy briefing schedule. And he decided, in his discretion, to decline to exercise jurisdiction in this matter. Now, while his case law says that the federal court has an unflagging obligation to exercise jurisdiction, in the declaratory judgment arena, there is an exclusion carved out by statute that says the court may. Not shall. Not must. Not shall not. May. This is a discretionary standard. Now, Judge Slomsky, in his wisdom, went through all the refer factors. And everyone had a chance to argue this. Everyone had a chance to agree with this. And his determination was that based on the refer factors, he's going to decline to exercise his discretionary jurisdiction. In his wisdom, he made that decision. Now, the case that he relied on in making that decision was not really raised by any of the other counsel. And it's not binding, but it's the land's decision. And in the land's decision, we have the exact same fact pattern. And Judge Smith decided he didn't want jurisdiction in that situation. And Judge Slomsky went through the land's decision and came to the same conclusion. Can I ask you about that? Because just to go through the refer factors briefly. The first factor is the likelihood that a federal court declaration will resolve the uncertainty of obligation, which gave rise to the controversy. Can you tell us how that was satisfied here? How would the federal court declaration in this case resolve the uncertainty of obligation? How the federal court declaration resolved the uncertainty? Well, my position is it should be in state court. So my thinking is that it should be in state court. We have to start by looking at the case that's in federal court before it gets sent back. So how would the federal court declaration resolve the uncertainty of obligation, which gave rise to the controversy? See, I'm a little confused. It's my fault, of course. I don't think it would because I think it's the state court obligation. It's the state's court's obligation to make this decision. Okay. What about the third factor, the public interest in settlement of the uncertainty of obligation? How does that go in your favor? This is an issue of strictly Pennsylvania state law interpretation of a Pennsylvania insurance contract with a Pennsylvania insurer sold by a Pennsylvania company that's doing business with Pennsylvania. So because it's state law, state court should adjudicate it. Absolutely. All right. But how do you square that with what we said in Reifer? And I quote, federal courts are, that's not the quote yet. The quote begins with, quote, perfectly capable of applying state law, end quote. They are perfectly capable of applying state law, but under the Reifer decisions, they should restrain to do so. And that is in the Reifer decision. They shouldn't jump into a declaratory judgment action when solely issues of state law. If there's a parallel proceeding. That's why there's a, if there is a parallel proceeding, there's a strong presumption, right, that it should be sent to the remanded of the district, the state court. But if there's no parallel proceeding, the presumption goes the other way. Well, Reifer does state that a parallel proceeding is not necessarily indicative. But I will say this. If there is a state proceeding, obviously the presumption is much stronger towards state court. I totally agree with that. Under the Landis decision, and Judge Slonsky followed that, the liability case was a state law proceeding. In addition, and I'm not entirely sure that this applies here. But do you define parallel proceeding as just the mere existence of a state court case that might have some impact on the federal court case? No, but I will say this. How do you define it? I define it the way the Landis court decides, defines it, which states that if you get off, similar to what Mr. Kowalski said, the issue of coverage needs to be decided before the issue of liability comes up. It's going to come up over there. The other issue is this, and this was not something people talked about. This matter was initially filed in state court. There is a state court term and number sitting there. Maxim removed it. The parties filed briefs in front of Judge Slonsky and said put it back. That's what she did. These are state court issues. There's a state court court term number waiting for us. When it got moved back, the court started working on it again. Maxim filed a motion to stay, and it was granted. So there is a court term and number just sitting there. It's like having a sports car in the garage, ready to go. I don't know why you always have to raise that, but that's the issue. Apparently they don't want to drive it. Maybe not. Well, I'm sure they want to drive it by Monday, but that's the issue. There is a state court proceeding here. The judge exercised sound and reasonable discretion, and we've all been in a situation where you disagree, but it was well within his discretion. Thank you. Thank you, counsel. Listening to the colloquy here, when counsel was being asked about some of the factors and why it is that they were satisfied, I think it reflects, and as counsel mentioned, after lengthy argument and lengthy briefing, there is still a lot of confusion as to how to apply these factors. And I think that's the other important opportunity that this case presents, is that the court does have guidelines for this circuit, but what do they mean? So, for example... Before we get into the reefer factors, will you just address Mr. Kowalski's argument? He describes and asks us to agree that parallel proceedings means two cases going down the tracks, not touching, but going down the tracks at the same time. Why is he wrong? Well, I would submit that the metaphor doesn't apply to two proceedings. If they didn't run side by side, they'd be in the same case. So I think that the metaphor just doesn't fit in the sense that you have to have a state case and a federal case. There would be no reason for them to touch. They're pending in two separate courts, and it's just whether one should yield to the other. If you have what we have here, which is a straight agent E&O case, did the agent make an error in terms of timely notifying the dram shop carrier? That has absolutely nothing to do with the proceeding that we've got here, which is, did the agent, for purposes of... Well, isn't that an overstatement, though? It doesn't have anything to do with it in the sense that one's an E&O tort case and the other one's a contract case. But I think you have to concede, do you not, that there could be some impact. Depending upon how these two cases are resolved, there could be some downstream impact among the parties. Isn't that true? I would suggest that the coverage case is reacting to what happens in the underlying case. There's two obligations, defense and... Well, just explain how that plays out, then. Certainly. As a practical matter, right now, Kelly has sued Carmen. Carmen has submitted to its carrier to provide it with the defense. Maxim has denied coverage. That duty to defend is a reaction to what's going on in the underlying case. Whether the jury in the underlying case comes back and finds that Carmen was or was not negligent will have no impact on the sole issue in the coverage action, which is, did Carmen, on a timely basis, have a claim that was made against it, which it reported to Maxim within a certain period. But why? Doesn't the Maxim potential liability go away if Carmen's off the hook? Yes. It goes away, right? If I were a district judge or a state court judge and I was dealing with this whole situation, I would probably stay the Maxim case, right? Because why are we going to spend a lot of time and money adjudicating that if Carmen is absolved of liability, right? Because if Carmen's absolved of liability, then the Maxim case goes away. Isn't that right? To some extent, and I think that's the only other part of this, is that right now Carmen is seeking a defense obligation. And regardless of whether the jury in the underlying case finds liability or not, Carmen expects Maxim to be paying on its behalf. And if I could bore down on the underlying case and the federal case just a little bit more, the underlying case has to do with Carmen's negligence, its conduct, relative to Kelly. The coverage action has to do with Carmen's conduct relative to its own carrier. So there's not any factual overlap or anything else that could be present in certain circumstances. But I'm about to run out of time here. I would just submit that to the extent that the court abused its sound and reasoned discretion, as far as the other factors are concerned. Since I cut you off where you were heading, why don't we give you a chance just to go through what you were going to say about the application of the reefer factors. I appreciate that. The district court, on the factors that he found, did apply. For example, the third factor, he did include some language regarding his rationale. He held that the state court would be better suited to resolve an issue of state law. I would submit that that's not what this court meant in creating the third factor. In insurance coverage, inverse preemption, you're always dealing with issues of state law. So, again, if that's the test, then that factor could never go in the favor of federal court decision. What the court meant was an unsettled area of significant state law, like in SUNY with the application of the pollution exclusion, like in reefer with regard to malpractice insurance for attorneys and the Pennsylvania Supreme Court's ability to regulate attorney conduct. So that would be true as a third factor. And then the same thing with the fifth and sixth factors that he also found applied, general policy of restraint, avoidance of duplicative litigation. I would submit that those factors are essentially decided the moment that there is no parallel proceeding. Right. They seem to be dependent. You either win or lose on those based on whether there is a parallel proceeding. Correct. And that's both five and six? That is correct. That is correct. And then if I could jump to the factors that he found to be neutral, there's some overlap there as well. The second factor, which is convenience. Again, if you don't have a second proceeding, why is it that the federal action could be inconvenient in any way? And if so, isn't there an assumption that- Can I just- I see what you're saying, and whether I disagree or not is material right now, but are you suggesting that we rewrite these factors? Because they were all meant to be non-exhaustive, I think. That's correct. The court would not have its way to say these are guidelines, it's not a strict test. But I think that to the extent that the court were to reverse here, not just on the issue of parallelism, but how parallelism has any sort of an impact in terms of sound and reasoned discretion on some of the other factors, any kind of clarification, it would go beyond this case, but I think it would be helpful to the district court judges as to how it should work in this circuit. Should we look to the case law that we've developed in other areas of abstention, like Colorado River and the like? Yeah, I think that Colorado River, other instances, is certainly relevant. Now, the court in Reiffer did go out of its way to say that insurance coverage, which frequently comes up in the DGA context, is unique, and so that's why some of these factors are really specific to the relationship between carriers and litigants. And so that's the situation where I think some of these would not apply outside of the coverage context. For example, the factor that the court found applied, the A factor, on the conflict of interest between the duty-to-defend and the deadly, obviously that would not apply in any situation other than insurance coverage. Same thing goes with unsettled areas of state law. I would submit that could come up in other situations, but it's more likely to come up in the context of coverage because of inverse preemption. And so I have nothing else to add. Okay, thank you, counsel, very much. We will take the case under advisement, and I ask that the court will adjourn court. But before we do, if counsel are amenable, we'd like to greet you at the end.